Tukley, J.
delivered the opinion of the court.
On the 5th day of September, 1842, the complainant, Horatio Wood, purchased of Jesse Harrison a negro boy, Bill. Sometime in the year 1842, Galbreath, Cromwell & Co. recovered a judgment before a justice of the peace in the county of Montgomery, against one William Rogers; which was stayed by the said Jesse Harrison. Galbreath, Cromwell & Co. were duly declared bankrupt, and all their effects of every kind and description came into the hands of Cornelius Cruisman, one of the defendants, as assignee. He caused execution upon this judgment to be levied in the county of Davidson upon the negro claimed to have been purchased by the complainant from Jesse Harrison, and this bill is filed to enjoin the sale. This is resisted by the defendants, upon the ground that the complainant has ample relief at law, and has not, under all the circumstances of the case, any right to ask the aid of a court of chancery.
It has always been held in this State, that, though negro property may be protected by a court of chancery from a wrongful sale by execution at law, yet that it must be where *280 the complainant’s title is clearly and satisfactorily established — that if there be any doubt as to this fact, the party asking the relief will be sent to law to try it; and that the relief will not be extended, if a court of law can give full and adequate remedy for the loss.
In this case, upon the first proposition, it is to be observed, that, from the proof in the cause, we think there is much reason for believing that the contract of sale between the complainant and Jesse Harrison was merely colorable, and made with the view to protect the negro from Harrison’s creditors. We do not deem it necessary to enter into an investigation of the proof, as we do not hold that it is conclusive of the fact, but only raises such a presumption of its existence as to repel the complainant, upon this point, from a court of chancery.
Upon the 2d point, it is to be observed that this case really does not present such a relation between master and slave as requires the interposition of a court of chancery. The complainant, of his own showing, bought the slave to save a debt, and he had no desire to own him, himself; on the contrary he was left in the possession of Harrison, the vendor, until he could be satisfactorily disposed of, for that purpose. The debt due being all that the complainant desired, damages at law would be a full and adequate relief for the wrongful conversion by the defendants. Surely, no one would ever think of applying this high preventive power of a chancery court (which has been established alone to preserve the relation of master and slave) to a negro trader, who was buying slaves for the market, with a view to profit by their re-sale, and who never contemplated any other relation between himself and the objects of his purchase, than that arising from a temporary ownership, which was to be severed at the first moment a sufficient remuneration could be obtained by a sale.
For these reasons, we affirm the decree of the chancellor dismissing the bill.